```
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:
                                                              Case No.: 15-72418-reg
LEWIS L. CAHILL,                                              Chapter 7

                        Debtor.
-----------------------------------------------------------x
ANNE ARGENTO and THOMAS ROMANO,

                        Plaintiffs,

           -against-                                          Adv. Pro. No.: 15-08298-reg

LEWIS L. CAHILL,

                        Defendant.
-----------------------------------------------------------x
```

## DECISION AFTER TRIAL

The matter is before the Court pursuant to an adversary proceeding commenced by judgment creditors Anne Argento ("Ms. Argento") and Thomas Romano ("Mr. Romano") (collectively, the "Plaintiffs"). The Plaintiffs seek to except from discharge a series of loans made to Lewis Cahill ("the Debtor") pursuant to Bankruptcy Code 523(a)(2)(A). Although the Plaintiffs allege identical causes of action and introduced the same documentary evidence at trial, the Court can find in favor of only one plaintiff. Mr. Romano, who testified at trial, established each element of both false representations and false pretenses and carried his burden of proof under §523(a)(2)(A). However, because Ms. Argento offered no proof of her reliance on the Debtor's representations when she agreed to make the subject loan, the Court finds that she has

1

failed to satisfy all of the required elements under §523(a)(2)(A), and thus her claim is discharged.[1]

While the Court's decision in this matter may seem harsh, the case highlights the fundamental proposition that it is the plaintiff's burden to prove each element of any cause of action set forth in the complaint. The Plaintiffs sought relief under §523(a)(2)(A) under any of the three enumerated theories of fraud based on a misrepresentation by the Debtor.[2] Even where the debtor's misrepresentations are clearly established under §523(a)(2)(A), the creditor must establish a record which permits the Court to find reliance on the debtor's misrepresentations. The standard for justifiable reliance is subjective as to each creditor and the existence of reliance as required by the statute is determined by the trier of the facts. However, in the case presented on behalf of Ms. Argento, the record is barren of any evidence regarding reliance on the Debtor's fraudulent misrepresentations. Ms. Argento's failure to introduce any evidence regarding her reliance precludes the Court from finding that Ms. Argento's debt is dischargeable under §523(a)(2)(A).

## PROCEDURAL HISTORY

In the Debtor's main bankruptcy case, the Plaintiffs jointly filed a motion to extend time to file an objection to the discharge of a debt under §523. (Case No. 8-15-72418-REG, ECF No. 17). The motion was granted and the Plaintiffs' time to file an objection to discharge was extended to November 16, 2015 under §§523(a)(2)(A) and 523(c). (Case No. 8-15-72418-REG, ECF No. 27). On November 11, 2015 Plaintiffs jointly filed a complaint pursuant to §523 and

---

[1] The Court need not determine the level of proof necessary to establish reliance under §523(a)(2)(A) in this case. Ms. Argento did not submit live or written testimony, nor any other form of admissible evidence demonstrating her reliance on the Debtor's misrepresentations. The issue of reliance was highlighted through multiple colloquies on the record, and by a motion to dismiss. Nonetheless, no evidence of her reliance was produced.

[2] As will be set forth below, a finding under the expanded version of actual fraud, as recently defined by the Supreme Court in *Husky International Electronics, Inc. v. Ritz,* 136 S.Ct. 1581 (2016) is inapplicable, as the fraud in this case was clearly based upon a misrepresentation by the Debtor.

§727.³  (Case No. 8-15-08202-REG, ECF No. 7).  Upon the Debtor's motion to dismiss, the Court dismissed the §727 claim as being untimely filed.  (Case No. 8-15-08202-REG, ECF No. 4; *Id.* No. 17).

The Debtor also sought dismissal of the §523(a)(2)(A) claim pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).  (Case No. 8-15-08202-REG, ECF No. 4, pg. 6).  The Debtor argued that the Plaintiffs failed to sufficiently allege the elements under §523(a)(2)(A), including reliance.  *Id.*  The Court disagreed and found that the §523 cause of action was adequately pled under Rules 12(b)(6) and 9(b).  (Case No. 8-15-08202-REG, ECF No. 17).  The Debtor filed an answer to the complaint and the parties filed a joint pre-trial memorandum.  (Case No. 8-15-08202-REG, ECF No. 12; *Id.* No. 41).  Trial was held on December 13, 2016.  At the close of trial, the Debtor moved the Court for a directed verdict as to Ms. Argento.  Trial Transcript ("Tr.") at 179.  The Court denied the directed verdict in order to consider the full record.  *Id.*  The matter was marked submitted at the conclusion of the trial.

## FACTS

In one sense of the word, the Debtor may be described as an entrepreneur.  In the 1990s, the Debtor operated a trucking business, which eventually failed.  Tr. 133.  The Debtor has been involved in the pharmaceutical business.  (Case No. 13-71850-REG, ECF No. 3).  At some point, he moved on to his current position in the oil business.  Tr. 146; *See also* Debtor's Chapter 7 Petition, Case No. 8-15-72418-REG, No. 1.  He was also a self-proclaimed "silent partner" of a restaurant and a Vice President of a solar panel business.  Tr. 144; Tr. 160.

In the Spring of 2006, before his involvement with the solar panel business, the Debtor sought "investors" to participate in his new venture into the restaurant business.  Tr. 118.  At the

---

³ The complaint was subsequently amended with more specific allegations of fraud.

3

suggestion of a family member, the Debtor called Ms. Argento, a relative of the Debtor, about investing with him. Tr. 117. According to the Debtor, Ms. Argento eventually agreed to lend him $100,000. Tr. 118. The Debtor also asked Ms. Argento if she knew anyone else who might be "interested in investing." *Id*. Ms. Argento introduced the Debtor to Mr. and Mrs. Romano. *Id*.

Mr. Romano is retired. Tr. 17. He previously was employed for 50 years as a tool and dye tradesman. *Id*. His educational background was limited to successful completion of a two year trade school in Italy. *Id*. Prior to his investments with the Debtor, Mr. Romano never participated in any similar transaction. Tr. 19. His experience with financial transactions was limited to participating in a 401(k) plan established by his employer. *Id*. It is clear he cannot be considered a knowledgeable or experienced investor. Tr. 19-20.

Ms. Argento has been a family friend of the Romanos for more than 20 years. Tr. 29. The women had worked together, and both Mr. and Mrs. Romano trusted Ms. Argento. Tr. 90-91. According to Mr. Romano, Ms. Argento suffered a stroke in 2015 and has since been living in a nursing home.[4] Tr. 73. Ms. Argento did not testify at trial. *Id*.

The Debtor cultivated a reputation of being a successful businessman, and was building a "big, fancy" home in the Hamptons. Tr. 12; Tr. 97. Based on his conversations with Ms. Argento, Mr. Romano believed that the Debtor's oil business was lucrative and thriving. Tr. 91. According to Mr. Romano, Ms. Argento advised that the Debtor was now focusing his energy in a new venture, as an owner of a "fancy" restaurant in the Hamptons, and was looking for other

---

[4] Counsel to the Debtor submitted a letter to the Court before the commencement of the trial relating that Plaintiffs' counsel would not produce Ms. Argento at trial. According to Ms. Argento's counsel she is confined to a nursing home with unspecified mental deficiencies. Debtor's counsel urged Plaintiffs' counsel to voluntarily dismiss Ms. Argento's complaint based upon this fact, to which Plaintiffs' counsel refused. Counsel to Ms. Argento did not introduce any evidence at trial to substantiate Ms. Argento's alleged condition.

people to invest. Tr. 91; Tr. 97. At the encouragement of Ms. Argento, Mr. and Mrs. Romano agreed to meet with her and the Debtor about a possible investment. Tr. 91.

A meeting between the four was set up by Ms. Argento to take place sometime in May of 2006. Tr. 118. At the meeting the Debtor told all the parties that he was raising money to invest in a restaurant in the Hamptons, and it needed some finishing touches to open by the end of the Summer. Tr. 12; Tr. 120. Mr. Romano recalled that the Debtor told them the restaurant would be fantastic, with a "fancy" chef from New York City. Tr. 12; Tr. 16. The Debtor made a reference to his ownership interest in the restaurant at the meeting. Tr. 129. Based on the Debtor's statements and conduct, Mr. and Ms. Romano believed he was a partner in the restaurant. Tr. 37; Tr. 92.

At the meeting, Mr. Romano questioned the Debtor why he needed $50,000 if he had such a successful oil business. Tr. 14. Mr. Romano understood from the Debtor that there were some issues with old customers and the receivables were falling behind. *Id*. In general, however, the oil business was very successful. *Id*. Mr. Romano testified that it was reasonable to believe that businesses could get in a tight financial situation. *Id*. Nevertheless, the money Mr. Romano would lend would be used to open up the restaurant. Tr. 16. The Romanos were also intrigued by the possibility of obtaining a higher interest rate on their life savings. Tr. 40; Tr. 75. In fact, the Debtor promised a rate of return that was three times higher than what they were receiving at the bank. Tr. 47.

It did not occur to Mr. Romano to seek out professional advice about the transaction, to obtain any financial information about the restaurant, to ask for an ownership interest in the restaurant, or to even visit the restaurant. Tr. 29; Tr. 55-58. Mr. Romano simply asked the Debtor if he was honest. Tr. 44. Based on the Debtor's assurances regarding his honesty, his

representations about his businesses, and Ms. Argento's endorsement of the Debtor, Mr. Romano decided make the loan. Tr. 44. The loans were memorialized utilizing form promissory notes which the parties executed. Tr. 115-116. *See also* Trial Exhibits 1 and 2. Mr. Romano tendered a check for $50,000 and Ms. Argento tendered a check for $100,000. Tr. 43 and Trial Exhibit 1 and 2. Interest was to be paid monthly. Trial Exhibits 1 and 2. Mr. Romano testified to an oral agreement that the note could be prepaid with a month or two's notice to the Debtor. Tr. 41; Tr. 76-77.

Despite the Debtor's representations, the reality was that the Debtor's interest in the restaurant was not yet determined. Tr. 121. The Debtor eventually admitted that he held no ownership interest in the restaurant despite referring to himself as a "silent partner."[5] Tr. 127; Tr. 129. It appears the restaurant did eventually open. Tr. 139. However, it is uncertain whether what part, if any, of the proceeds from Mr. Romano's and Ms. Argento's loans were used for the restaurant. The Debtor was the named payee on the checks tendered by Mr. Romano and Ms. Argento and they were deposited, not into a corporate account, but rather into the Debtor's son's personal account. Tr. 152; Tr. 131. The Debtor testified that he had opened up a bank account in the name of the restaurant and "gifted" the first installment of money to the restaurant as a silent partner. Tr. 153-154. However, neither records of a bank account in the name of the restaurant nor evidence of payments were produced by the Debtor. Tr. 155.[6]

The Debtor admitted at trial that he did not own an oil business. Tr. 145. In fact, he worked for his son's oil business. *Id*. Earnings from his employment provided the source of interest payments he made on the loans from Mr. Romano and Ms. Argento. Tr. 148. The

---

[5] Trial Exhibit 9 is a compilation of Share Certificates for the restaurant, "Q Restaurant Corp." issued to Sean Cahill, the Debtor's son.
[6] The Debtor couldn't recall the name of the bank when he first opened up the account in the name of the restaurant, but knew that it had eventually been acquired by Capital One. Tr. 155.

Debtor began making the interest payments to the Plaintiffs as soon as the transactions were completed. *Id*.

A second meeting was held in the Summer of 2007. Tr. 147. Mr. and Mrs. Romano attended, along with Ms. Argento and the Debtor. Tr. 22-23. The purpose of the meeting was to secure additional financing for the restaurant. Tr. 148. It appears the parties received the same information from the Debtor during the meeting. Tr. 27. At this point, the Debtor was current on the monthly interest payments he had promised to Mr. Romano.[7] Tr. 24. This was a factor that Mr. Romano relied upon when deciding to "invest" a second time. *Id*.

As a result of this meeting, Mr. Romano loaned the Debtor another $50,000 under terms and conditions identical to the earlier transaction. Tr. 23 and Trial Exhibit 3. Ms. Argento loaned the Debtor another $50,000. Trial Exhibit 5. Initially, the Debtor testified he deposited these funds in the restaurant's supposed bank account, but could provide no evidence of that and ultimately testified that he actually could not recall where the money was deposited. Tr. 166-169.

A third meeting was held between the Plaintiffs, Mrs. Romano, and the Debtor sometime in the Spring of 2008. Tr. 98; Tr. 158-159. The Debtor was current with interest payments on both of Mr. Romano's loans.[8] Tr. 31. At the meeting, the Debtor claimed to be starting up a new business installing solar panels, called Green Work Solutions. Tr. 158. The Debtor represented that he was getting involved with the State and Federal Government in a restoration project located at Bedford Stuyvesant in Brooklyn. Tr. 159. Mr. and Mrs. Romano understood that the contracts were with the government and were on the verge of being signed. Tr. 99. The Debtor convinced Mr. Romano that once the contracts were executed the business would be very

---

[7] The record does not establish whether the Debtor was also up to date on his interest payments to Ms. Argento.
[8] Again, the record is not clear on whether Ms. Argento's interest payments were up to date.

successful. Tr. 31. The Debtor represented that Green Work Solutions was promised seventy more similar contracts with the same parties. Tr. 159. After this meeting, Mr. Romano gave the Debtor an additional $25,000 loan, half the amount that was requested. Tr. 34. Ms. Argento loaned an additional $25,000 as well. Trial Exhibit 7.

While it is true that Green Work Solutions was a business, and the Debtor was the Vice-President, Green Work Solutions only had one contract with Bedford Stuyvesant. Tr. 159-161. Regardless, the third infusion of money did not end up in the Green Work Solutions bank account, if one existed, nor did it go towards any Green Work Solutions project. Tr. 163. The Debtor admitted the money was used to pay back another creditor that the Debtor owed, and the money was diverted through the restaurant's bank account. Tr. 163; Tr. 173. The Debtor admitted that he was taking money from "Peter to pay Paul." Tr. 172.

The Debtor received an aggregate amount of $300,000 from Mr. Romano and Ms. Argento. Trial Exhibits 1-7. Mr. Romano relied on what the Debtor and Ms. Argento had represented to him in making the loans. Tr. 29. If Mr. Romano had known the truth about the Debtor, the Debtor's financial history and the business ventures, he would have never loaned the money. Tr. 21. Ms. Argento did not testify at trial. There were no statements in the record indicating whether she relied on what the Debtor had represented to her in deciding to make the loans. The only evidence in the record demonstrating Ms. Argento's reliance on the Debtor's misrepresentations was in the Plaintiffs' Complaint, the substance of which the Court may only view as allegations, not fact.

Both Mr. Romano and Ms. Argento obtained judgments ("Judgments") from the Supreme Court of the State of New York in Suffolk County against the Debtor. Trial Exhibits 32 and 33. The Judgments entered into evidence include a ruling on "the first cause of action set forth in the

complaint." Trial Exhibits 32 and 33. Ms. Argento's Judgment is set forth in the amount of $175,000 plus interest and Mr. Romano's Judgment is in the amount of $125,000 plus interest. Trial Exhibits 32 and 33. The Judgments both indicate that a decision was annexed to the ruling, however, the Plaintiffs failed to also attach either the original complaint against the Debtor, or the decision from the Supreme Court.[9]

## LEGAL STANDARD

An action under §523 of the Bankruptcy Code results in a specific debt being deemed non-dischargeable in the debtor's bankruptcy, if the creditor successfully meets his or her burden. 11 U.S.C. §523. *See In re Danns,* 558 F.2d 114, 116 (2d Cir. 1977). This is in contrast to a successful non-dischargeablility action under §727 of the Bankruptcy Code that denies a debtor's discharge in its entirety. 11 U.S.C. §727. Hence, a finding of non-dischargeability under §523 is specific to the relationship or transaction between the creditor and the debtor.

The creditor has the burden of proving the elements of a §523(a) claim in order to have his debt deemed non-dischargeable as against the debtor. *Sarasota CCM, Inc. v. Kuncman*, 466 B.R. 590, 595 (E.D.N.Y. 2012). The creditor must prove the required elements of each subsection of §523 by a preponderance of the evidence. *Id.* The Bankruptcy Code's fresh start objective requires any fraud exception to dischargeability to be construed strictly against the creditor and liberally in favor of the debtor. *In re Welch*, 208 B.R. 107, 110 (S.D.N.Y. 1997); *See also In re Kern,* 542 B.R. 87, 95 (Bankr. E.D.N.Y. 2015) (citing *Grogan v. Garner,* 498 U.S. 279 (1991)).

---

[9] During a colloquy at trial Debtor's counsel mentioned the judgments were for breach of contract actions. Tr. 179. However, no additional evidence in the record exists to support this statement.

The Plaintiffs have the burden of proving by a preponderance of the evidence that their claims are non-dischargeable under §523(a)(2)(A) by showing that the Debtor obtained money from them by either false pretenses, false representations, and/or actual fraud.

Much ink has been spilled over what is required to prove non-dischargeability under §523(a)(2)(A). The provision enumerates three specific, limited exceptions to the dischargeability of claims as follows:

> (a) A discharge under section 727 […] of this title does not discharge an individual debtor from any debt –
>    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
>       (A) false pretenses, a false representation, or actual fraud…

11 U.S.C. 523. The Supreme Court has recently issued an opinion regarding §523(a)(2)(A) which clarifies that although some types of fraud might require specific elements that overlap, "actual fraud" encompasses fraudulent acts by a debtor that can be undertaken without a false representation. *Husky International Electronics, Inc. v. Ritz,* 136 S.Ct. 1581, 1586 (2016) (holding that a fraudulent conveyance is included in "actual fraud" for purposes of §523(a)(2)(A)). In further support of this notion, the Supreme Court cited *Field v. Mans,* 516 U.S. 59 (1995), for the proposition that the elements of each type of fraud under §523(a)(2)(A) must be construed as common law has defined them. *Id.* Thus, the three types of fraud enumerated in §523(a)(2)(A), however similar, must be analyzed individually. *See Id.*

The three types of fraud enumerated in §523(a)(2)(A) are false pretenses, false representation, and actual fraud. 11 U.S.C. §523(a)(2)(A). "Actual fraud" was added by Congress in the 1978 amendments to the Bankruptcy Code. *Husky,* 136 S.Ct. at 1584. Since the 1978 addition, numerous courts have scrutinized this addition, concluding that each of the three types of fraud must have a specific meaning, otherwise Congress could have used a singular term such as "fraud" generally. *See Id.* The plaintiff can satisfy a claim under §523(a)(2)(A) by

establishing just one of the three types of fraud. *Id.*; *See also Indo–Med Commodities, Inc. v. Wisell (In re Wisell),* 494 B.R. 23 (Bankr.E.D.N.Y.2011) (finding the elements met under false pretenses but not under false representation or actual fraud).

For purposes of §523(a)(2)(A), the term "false pretenses" means conscious, deceptive, or misleading conduct calculated to obtain, or deprive another of property. *In re Cassandro*, No. 8-10-79506-REG, 2015 WL 5996277, at *3–5 (Bankr. E.D.N.Y. Oct. 14, 2015) *aff'd, Cassandro v. Perillo,* No. 15-CV-6255-JMA (E.D.N.Y. Feb. 21, 2017) (citing *Gentry v. Kovler (In re Kovler),* 249 B.R. 238, 261 (Bankr.S.D.N.Y.2000)). It includes "any scam, scheme, subterfuge, artifice, deceit, or chicane in the accomplishment of an unlawful objective" by the defendant. *Id.* "'A false pretense has also been held to be an implied misrepresentation or conduct intended to create a false impression,' although in either case, it is 'promoted willingly and knowingly by a defendant and is not the result of unintentional conduct or an unintentional misrepresentation.'" *In re Nisivoccia,* 502 B.R. 139, 155 (Bankr.E.D.N.Y.2013) (citing *In re Hambley,* 329 B.R. 382 (Bankr.E.D.N.Y.2005)). "Failure to disclose material facts on which a transaction depends constitutes false pretenses." *In re Hambley,* 329 B.R. at 396 (citing *In re Soliz,* 201 B.R. 363 (Bankr.S.D.N.Y.1996)).

The elements required to establish a debt as non-dischargeable under false pretenses are (1) an implied misrepresentation or conduct by the debtor; (2) promoted knowingly and willingly by the debtor; (3) creating a contrived and misleading understanding of the transaction on the part of the creditor; (4) which wrongfully induced the creditor to advance money, property or credit to the debtor. *In re Hambley,* 329 B.R. at 396 (citing *In re Dobrayel,* 287 B.R. 3, 12 (Bankr.S.D.N.Y.2002)).

Similarly, to establish "false representations" under section 523(a)(2)(A) the creditor must prove that the debtor (1) made a false or misleading statement; (2) with the intent to deceive; (3) in order for the creditor to turn over money or property to the debtor. *In re Cassandro*, 2015 WL 5996277, at *3–5 (citing *In re Chase,* 372 B.R. 133, 137 (Bankr.S.D.N.Y.2007); *See also Frishberg v. Janac (In re Janac),* 407 B.R. 540, 552 (Bankr.S.D.N.Y.2009); *In re Dobrayel,* 287 B.R. at 12 (citing BLACK'S LAW DICTIONARY at 619 (7th ed.1999)).

Some courts have conflated false representations with false pretenses. *See* 4-532 Collier on Bankruptcy P 523.08 (16th ed. 2016) (collecting cases). However the two are factually distinguishable: otherwise Congress would have amended the statute only to include one or the other. *See Ruegsegger v. McCarley,* 262 Or. 157, 496 P.2d 214 (Or. 1972); *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 127 B.R. 1004 (N.D. Ill. 1991). The element distinguishing a false representation from a false pretense is an explicit, definable statement by the debtor that results in a misrepresentation. A false pretense, on the other hand is conduct by the debtor that implies or promotes a scheme that is misleading. While most times both conduct and explicit statements by the debtor exist, thereby establishing a fraud under both false pretenses and false representation, the creditor may be able to establish the debtor's conduct without a showing of explicit statements or explicit statements without a showing of the debtor's conduct and still be successful under §523(a)(2)(A). *See In re Wisell,* 494 B.R. 23 at 36-37 (holding that the underlying state court's opinion for a judgment against the debtor provided enough evidence proving a fraudulent scheme for false pretenses, but was insufficient to establish the elements of a false representation because the state court decision only showed a deliberate failure to disclose information which lacked evidence proving the debtor's fraudulent intent to deceive).

Finally, a debt may be excepted from discharge under §523(a)(2)(A) where a creditor can establish the elements of "actual fraud." The Supreme Court in *Husky* broadened the definition of actual fraud to include types of fraud beyond frauds based on a misrepresentation. *Husky,* 136 S. Ct. at 1586. *Husky* defines "actual fraud" as "anything that counts as 'fraud' and is done with wrongful intent," which included a fraudulent conveyance scheme undertaken by the debtor in *Husky*. *Id.* at 1590.

While *Husky* expanded the definition of actual fraud to include more than fraud based on a misrepresentation, the Supreme Court clearly held that "actual fraud" also encompasses fraudulent inducement based on a misrepresentation. *Husky,* 136 S. Ct. at 1586. Therefore, the Second Circuit's interpretation of actual fraud based on a misrepresentation still requires "a false representation, scienter, reliance and harm." *Evans v. Ottimo,* 469 F.3d 278, 283 (2d Cir.2006).

Notwithstanding the expansive reach of *Husky* with respect to "actual fraud," the Court finds when a misrepresentation is present under any of the three types of fraud outlined in §523(a)(2)(A), reliance must also be shown. Consistent with *Field* and its progeny, the Court finds that reliance is a required element under §523(a)(2)(A) when the fraud is based on a misrepresentation.

Despite the distinctions between the three types of fraud, some of the underlying elements overlap under §523(a)(2)(A). *Husky,* 136 S. Ct. at 1588. It is inevitable that in establishing one type of fraud under §523(a)(2) one of the two remaining types of fraud might also be proven. *Id.* The common elements of a fraud based on a misrepresentation are the debtor's intent, the creditor's reliance, and causation. *Field,* 516 U.S. at 68. While common, the elements need to be interpreted in light of the type of fraud alleged. *See Husky,* 136 S.Ct. at

1590. The circumstances in this case are unique, and require an in-depth consideration of overlapping element of each Plaintiff's justifiable reliance more in depth.

### Justifiable Reliance

The Supreme Court in *Field* discusses at length the reliance standard as set forth in §523(a)(2)(A) concluding that reliance must be justifiable. *Field,* 516 U.S. at 77. There the Supreme Court rejected the objective, reasonable person standard that had been causing inconsistencies among the circuits. *Id.* Instructive to the Supreme Court was Congress' express requirement of reasonable reliance in §523(a)(2)(B) and the lack of the requirement in 523(a)(2)(A). *Id.* "No one, of course, doubts that some degree of reliance is required to satisfy the element of causation inherent in the phrase 'obtained by.'" *Id.* at 66.

The Supreme Court settled on a minimal, justifiable reliance standard that, although low, is not without some limits. *Field,* 516 U.S. at 71. A creditor is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Id.* (citing Restatement (Second) of Torts, §541). There is no initial duty to investigate under a justifiable reliance standard. Restatement (Second) of Torts §540; *see also In re Scialdone,* 533 B.R. 53, 61 (Bankr. S.D.N.Y. 2015) (a duty only arises once the creditor receives an indication of deception). An examination or investigation is not necessary unless, under the circumstances and from a cursory glance, the facts should be apparent to one of his knowledge and intelligence to begin an investigation, or he has discovered something which should serve as a warning that he is being deceived. *Field,* 516 U.S. at 71-72 (citing Prosser's Law on Torts §108); *See also Fellows, Read & Associates v. Rieder,* 194 B.R. 734, 738 fn. 2 (S.D.N.Y. 1996), *aff'd* 116 F.3d

14

465 (2d Cir. 1997) (noting that once the creditor should become aware of the debtor not telling the truth, justifiable reliance requires some investigation).

The subjective nature of the reliance requirement also suggests that some proof of reliance also needs to be shown by each creditor. In *Field,* the Supreme Court noted that not all creditors are naïve and thus "the subjectiveness of justifiability cuts both ways." *Field,* 516 U.S. at 77. Therefore, to make a showing of justifiable reliance, a creditor must show his subjective reliance on the misrepresentations by some proof of his or her own.[10]

## ANALYSIS

**Mr. Romano**

In his complaint, Mr. Romano seeks to have his judgment debt deemed non-dischargeable pursuant to §523(a)(2)(A) under any of the three theories of fraud. This Court finds that Mr. Romano's debt is non-dischargeable based on the Debtor's false representation and the Debtor's false pretenses.

*False Representations*

The Debtor made various false and misleading statements. At the initial meeting, the Debtor made representations that he needed money for the purposes of starting up a restaurant. He falsely portrayed himself as successful entrepreneur who had owned or was involved in successful business ventures. On three different occasions, the Debtor asked for "investments" or "loans" in the restaurant and then for a solar panel company. Whether a loan or an

---

[10] The Court is not commenting on the amount or type of evidence necessary to make this showing. However, in the case of Ms. Argento, there is no evidence in the record to support her reliance on the Debtor's misrepresentations, other than conjecture.

15

investment, it was not an investment in these ventures. In fact, the proceeds were used for everything but the purposes the Debtor represented.

The Debtor's testimony at trial lacked credibility. Material statements the Debtor made at the beginning of his testimony contradicted his statements toward the end. After repeated questioning, the Debtor admitted that proceeds from Mr. Romano's loan were deposited into the Debtor's son's bank account, and the Debtor used the loan proceeds to pay off other creditors. These acknowledgements clearly demonstrate an intent to deceive. The Debtor's intent to defraud is further exhibited by the fact that he continued to make false and misleading representations to Mr. Romano in seeking additional money.

Mr. Romano relied upon these misrepresentations. The Debtor misled Mr. Romano into believing that he was a successful businessman, that he owned an interest in a restaurant and that the money he solicited from Mr. Romano was for investment in the restaurant and a solar panel business. The allure of the Debtor's "fanciness" was likely appealing as well. Mr. Romano testified that he relied on Mr. Romano's reputation and was convinced by the Debtor that he was honest and trustworthy. As reliance is subjective in nature, it is important to consider that Mr. Romano had no experience with investments of this type. Mr. Romano believed he was going to be paid, and he continued to believe this until the Debtor stopped making the interest payments and Mr Romano learned the truth.

During the trial, defense counsel focused on whether Mr. Romano had done any investigating outside the information he had received by the Debtor during the meetings. Mr. Romano consistently said he had undertaken no investigations. However, justifiable reliance only requires an investigation if the creditor has some reason to suspect that the debtor is not truthful or that an investigation is necessary. The Court finds that Mr. Romano had no reason to

verify the Debtor's representations based on what Mr. Romano knew, and because the Debtor had not missed any interest payments. Mr. Romano's reliance upon the Debtors statements and assurances was justifiable.

Finally, the Debtor's misrepresentations were the cause of Mr. Romano's losses. Therefore, because Mr. Romano proved by a preponderance of the evidence that his debt was obtained by false representations, Mr. Romano's claim shall be deemed non-dischargeable pursuant to §523(a)(2)(A).

### *False Pretenses*

Alternatively, Mr. Romano's claim is non-dischargeable under the false pretenses theory of fraud in §523(a)(2)(A). As explained above, the distinguishing element between a false pretense and a false representation is that of an explicit statement by the Debtor that results in an overt misrepresentation. Here, even without the Debtor's explicit statement, false pretenses existed because the Debtor's conduct created a false impression in order to promote a fraudulent scheme. By misrepresenting his background and business success and by promoting the restaurant, the Debtor created the impression that Mr. Romano's loan would be used for the restaurant. The Debtor also failed to disclose material information about the underlying transaction which supports a finding of false pretenses. In light of the Debtor's actual intentions to divert the money to his other creditors, or to his son, false pretenses has been established. Reliance and causation have also been established, as set forth above.

Because the Court finds Mr. Romano has met the elements under false pretenses and false representation, the Court need not analyze Mr. Romano's claim under the theory of actual fraud pursuant to §523(a)(2)(A).

**Ms. Argento**

It is clear in this case that the Debtor made identical misrepresentations to both Plaintiffs. Having established the existence of a misrepresentation, the next step is for the creditor to show justifiable reliance on those misrepresentations under either theory of false pretenses, false representations, or actual fraud.

In this case, Ms. Argento failed to meet her burden of proof that she relied upon the Debtor's statements or actions of.  Ms. Argento did not testify at trial, nor did she submit an affidavit.  She did not provide the supplemental information associated with her state court judgment against the Debtor.  While the state court judgment was introduced at trial, neither the memorandum decision, nor the original complaint filed in state court was made part of the record.  The Court is left with no information regarding the cause of action, or any findings made by the state court which could have established Ms. Argento's justifiable reliance on the Debtor's misrepresentations.

While the record indicates that Ms. Argento heard the same statements that Mr. Romano did at the various meetings with the Debtor, there is no record of her actual reasons for loaning the Debtor the money.  Furthermore, the Debtor testified that he and Ms. Argento had conversations outside those made in the presence of Mr. and Ms. Romano.  The Court cannot assume that Ms. Argento based her decision to make the loans on the same factors set forth by Mr. Romano.

While the allegations in the complaint do state a cause of action under §523(a)(2)(A), these allegations cannot suffice to establish the required elements.  Because justifiable reliance is subjective in nature, reliance by each plaintiff must be shown.  Ms. Argento's failure to introduce any admissible evidence leaves the Court with no choice other than to find that Ms. Argento has failed to meet her burden under the statute and therefore her claim is discharged.

The Supreme Court in *Husky* expanded the definition of actual fraud under §523(a)(2)(A) by concluding that a fraudulent conveyance scheme may suffice to fit within this exception. While an argument may be made in Ms. Argento's favor that the type of fraud committed upon her might fall into a type of fraud not requiring a showing of reliance, the facts do not support such a finding. The fraud in this case was based on a misrepresentation. A misrepresentation, even if established under actual fraud, still requires the five elements of fraud under common law which include reliance. Therefore, even under the alternative actual fraud analysis, Ms. Argento's complaint must be dismissed.

## CONCLUSION

For the reasons set forth herein, the Court grants judgment in favor of Mr. Romano on his First Claim for Relief and dismisses Ms. Argento's complaint against the Debtor. A judgment consistent with this memorandum decision shall be entered forthwith.



**Dated: Central Islip, New York**
**February 22, 2017**

_____
**Robert E. Grossman**
**United States Bankruptcy Judge**